UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JENNIFER B. REISINGER,

      Plaintiff,

v.                                          Case No. 08-C-708

JUAN PEREZ,

      Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, DISMISSAL, AND SANCTIONS

### I. PROCEDURAL BACKGROUND

This action was commenced on August 20, 2008, when the plaintiff, Jennifer B. Reisinger ("Reisinger"), filed a complaint in the United States District Court for the Eastern District of Wisconsin pursuant to 42 U.S.C. § 1983. In her complaint, Reisinger claims that the defendant, Juan Perez ("Perez"), who at all times relevant to this action was the Mayor of the City of Sheboygan, Wisconsin, violated Reisinger's First Amendment rights.[1] In particular, Reisinger claims that Perez was motivated to retaliate against Reisinger for her role in a recall campaign against Perez. (Complaint ¶¶ 8-11.) Reisinger further claims that Perez retaliated against her by directing the Sheboygan City Attorney Stephen G. McLean ("Attorney McLean") to send Reisinger a "cease-and-desist" letter, which demanded that Reisinger sever a link on a website she maintained to the Sheboygan Police Department website. (Compl. ¶ 15.) This action was originally assigned to Chief United States District Judge Charles N. Clevert, Jr., but was transferred to this court after all parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.).

---

[1] While the plaintiff's complaint named several defendants in addition to Perez, all other named defendants have been dismissed from this action.

Currently pending before the court are the defendant's motions for summary judgment, dismissal, and sanctions, all of which are fully briefed and are ready for resolution. In support of his motions, Perez filed a single initial brief. Perez states in his initial brief that he filed a motion for summary judgment, which he states raises the same legal issues as his motion to dismiss, "for the purpose of adding certain undisputed facts which are omitted from the complaint." (Defendant's Brief at 2.) Because the defendant's motions for dismissal and summary judgment raise the same legal issues, this court will first address the defendant's motion for summary judgment. For the reasons which follow, Perez's motion for summary judgment will be denied, his motion to dismiss will be denied, and his motion for sanctions will be denied.

## II. FINDINGS OF FACT

In accordance with the provisions of Civil Local Rule 56.2(a) (E.D. Wis.), the defendant's motion for summary judgment was accompanied by a set of proposed findings of fact. The plaintiff has not filed a response to the defendant's proposed findings of fact. Civil Local Rule 56.2(b) provides as follows:

> Response. Any materials in opposition to a motion filed under this rule must be filed within 30 days from service of the motion and must include:
>
> (1) A specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number and must include specific citations to evidentiary materials in the record which support the claim that a dispute exists.

In turn, Civil Local Rule 56.2(e) provides:

> (e) In deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out.

Applying Civil Local Rule 56.2(e) to the instant case, the court concludes that the plaintiff does not dispute the defendant's proposed findings of fact. Accordingly, the court will proceed by reciting the facts as set forth by the defendant.

The events at issue in this action involve the contentious relationship between Perez, in his role as the Mayor of Sheboygan, and Reisinger, in her role as a politically active citizen of Sheboygan. Sometime in early 2006, Reisinger began to take an interest in an effort then underway to recall Mayor Perez from office. (DPFOF ¶ 3.) On May 19, 2006, Reisinger created a website dedicated to the recall efforts. (DPFOF ¶ 4.) Reisinger's recall website included a forum, a photo gallery and other content relating to the recall effort. (DPFOF ¶ 5.) Reisinger publicly identified herself during this time as a member of a group spearheading the effort to recall Perez that was known as "Citizens for Responsible Government." (DPFOF ¶ 6.)

Apart from her recall activities, Reisinger maintained a number of other websites, including one site called "Brat City Web Design" (hereinafter referred to as "Brat City"). (DPFOF ¶ 7.) Included in the Brat City website were links to other websites, one of which was to the Sheboygan Police Department website. (DPFOF ¶ 8.)

On October 18, 2007, Mary Rajer ("Rajer"), an employee in the Office of the Mayor, sent an e-mail note to Sheboygan City Attorney McLean regarding Reisinger's Brat City website. In her note, Rajer stated that the website featured a link to the Sheboygan Police Department website. (DPFOF ¶ 9.) Rajer's e-mail further stated that Perez, in his official capacity as Mayor, "was inquiring if this was permissible for Ms. Reisinger to do without authorization." (DPFOF ¶ 10.) On October 18, 2007, Attorney McClean answered Rajer's e-mail in pertinent part as follows: "[a]nyone can create a link to someone else's website very easily without the knowledge or consent of the linked party." (DPFOF ¶ 11.)

Sometime on October 18 or 19, 2007, Rajer indicated in an e-mail to Attorney McLean that Perez wanted Attorney McLean to send Reisinger a cease-and-desist letter regarding the link on Reisinger's Brat City website to the Sheboygan Police Department website. (DPFOF ¶ 14.) In response to Rajer's e-mail, Attorney McLean drafted a letter to Reisinger dated October 19, 2007, which stated in pertinent part:

> It has been brought to my attention that the website that you operate, namely www.sheboyganspirit.com, includes as one of its "local links" a link to the City of Sheboygan Police Department website.
>
> I am further advised that the City has not authorized this connection to its Police Department website, and we wish to have the link severed until such time as the City were to give authorization.
>
> To the extent that maintenance of this link could be construed as having been authorized or endorsed by the City and/or its Police Department, or that there is some affiliation between your website and the City of Sheboygan, or that we are somehow endorsing your website, we hereby demand that you sever this link and cease and desist from linking your website to the City's Police Department website until such time as the City were to authorize such a link.
>
> Thank you for your anticipated cooperation.

(DPFOF ¶ 15.)

On October 20, 2007, Reisinger received Attorney McLean's letter. Reisinger responded to Attorney McLean with an e-mail stating that her website, www.SheboyganSpirit.com, did not have a link to the Sheboygan Police Department website. (*Id.*) At some point, Attorney McLean and Reisinger determined that Attorney McLean's letter had referred to the wrong website, and that Attorney McLean's letter was intended to address the link on Reisinger's Brat City website to the Sheboygan Police Department website. (DPFOF ¶ 16.) Subsequently, Reisinger wrote to Attorney McLean as follows:

> I do think this is very silly, very trite, and very, very wrong, but if this is what you wish, so be it. I will remove the link but that won't stop my support of the police.

(DPFOF ¶ 17.) For purposes of this motion, the court presumes that Reisinger removed the link, because on October 22, 2007, Attorney McLean thanked Reisinger for removing the link from her website. (*Id.*) That said, Reisinger restored the link a few days after she removed it. (DPFOF ¶ 18.)

On October 31, 2007, Reisigner received a phone message from Lieutenant Johnston ("Lt. Johnston") of the Sheboygan Police Department. (DPFOF ¶ 19.) In his message, Lt. Johnston stated that he was investigating the circumstances concerning the link on Reisinger's website to the Sheboygan Police Department website and asked Reisinger to call him. (*Id.*) After leaving the phone message, Lt. Johnston sent Reisinger an e-mail on October 31, 2007, asking Reisinger to call him. (*Id.*)

Reisinger spoke at least once with Lt. Johnston on October 31, 2007. (*Id.*) Lt. Johnston did not tell Reisinger that he was investigating her. (*Id.*) Reisinger sent Lt. Johnston a copy of Attorney McLean's letter. (*Id.*) Reisinger knew at the time she spoke with Lt. Johnston that the link on her website to the Sheboygan Police Department website was legal and thought the investigation was trite. (*Id.*) Additionally, on October 31, 2007, Reisinger contacted the Wisconsin Department of Justice and was told by someone who worked there that the link on her website was lawful. (*Id.*)

On November 1, 2007, Reisinger sent a letter to Attorney McLean expressing her concern that there was a police investigation of the matter. (DPFOF ¶ 21.) Reisinger also retained an attorney who advised her not to remove the link on her website and who also contacted Sheboygan city officials. (DPFOF ¶ 22.)

On November 2, 2007, Reisinger met with Lt. Johnston. (DPFOF ¶ 23.) At the meeting, Lt. Johnston informed Reisinger that he was investigating the link and not Reisinger. (*Id.*) Reisinger

wrote out a statement at the meeting in which she described the creation of the link, that she created the link without seeking permission, and that permission was not necessary to create the link. (*Id.*) Reisinger concluded her statement by stating that, "[i]n closing, I understand that I am not the focus of this investigation. I am volunteering this information as a witness." (DPFOF ¶ 23.) Reisinger knew when she wrote this statement that she would not be prosecuted in connection with the link on her website. (DPFOF ¶ 24.)

Thereafter, Reisinger contacted, via e-mail, a local radio show personality, Mark Belling ("Belling"), whose talk-radio program airs on 1130 WISN-AM. (*Id.*) Reisinger informed Belling of the contents of Attorney McLean's letter, including Attorney McLean's demand that Reisinger remove the link to the Sheboygan Police Department website from her website. (*Id.*) Subsequently, Belling talked about Attorney McLean's cease-and-desist letter on his radio program. (*Id.*)

After Belling spoke of Reisinger and the cease-and-desist letter on the radio, Reisinger's phone "started ringing off the hook," and she received numerous e-mails and calls that were "kind" and "supportive." (DPFOF ¶ 26.)

On November 6, 2007, Reisinger was notified by her attorney that the City of Sheboygan was withdrawing its demand that the link between Reisinger's Brat City website and the City of Sheboygan Police Department website be severed or that she cease and desist from engaging in that activity. (DPFOF ¶ 27.)

Reisinger claims that the City's actions with respect to her website and the investigation of Lt. Johnston caused her significant distress and public humiliation, embarrassment, and even ridicule on other websites and blogs and that local newspapers published stories about the investigation. (DPFOF ¶ 28.) Reisinger claims that she was not embarassed until after Belling's radio program regarding her website aired. (DPFOF ¶ 29.) Reisinger claims that, among other responses, she received death

6

threats and other threats to her personal safety, including vulgar and obscene comments and letters left at her residence causing her fear for her own personal safety. As a result of the foregoing, Reisinger installed video cameras and a burglar alarm at her residence. (DPFOF ¶ 30.) Reisinger claims that her ability to express herself either on her websites or in any other fashion, as it relates to the City of Sheboygan, has been diminished. (DPFOF ¶ 31.) Reisinger further states that she has suffered an estimated fifty-three percent decrease in her personal income following the events in question. (DPFOF ¶ 32.) That said, the link at issue was a free service for which Reisinger received no money. (DPFOF ¶ 33.) Additionally, the flow of Reisinger's work has been consistent for the past three years. (DPFOF ¶ 34.)

While Reisinger has a desire to professionally design websites, no one has hired her for such a purpose. (DPFOF ¶ 35.) Reisinger believes that no one has hired her as a web designer because of the publicity surrounding her website issues with the City of Sheboygan. (DPFOF ¶¶ 36, 37.)

Reisinger acknowledges that, other than the cease-and-desist letter she received, she has no knowledge of any action taken by Perez that she considered retaliatory.[2] (DPFOF ¶ 38.)

### III. SUMMARY JUDGMENT STANDARD

A district court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[2] There appears to be some discrepancy between the plaintiff's complaint, which avers that Mayor Perez initiated the police investigation of Reisinger (*see* Compl. ¶¶ 26-27), and Reisinger's statement that she has no knowledge of retaliatory acts by Mayor Perez other than the cease-and-desist letter. Because the defendant's motions will be denied on other grounds, the court will proceed by assuming that there is a disputed issue of fact as to who initiated Lt. Johnston's investigation.

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "'[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion.'" *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

"To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the

material facts.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995)). "A mere scintilla of evidence in support of the nonmovant's position is insufficient." *Id.*

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### IV. DISCUSSION

In support of his motion for summary judgment, Perez offers the following arguments: (1) Reisinger's First Amendment claim must be dismissed because Perez's conduct is protected by qualified immunity; and, (2) Reisinger's claim for damages is moot. (Def.'s Br. at 2.) Perez further contends that Reisinger's claims should be dismissed as frivolous and that Reisinger should be sanctioned for pursuing this action. (*Id.*)

**A. Qualified Immunity**

The defense of qualified immunity constitutes "a powerful shield that insulates officials from suit as long as their conduct does not violate a clearly established constitutional right of which a reasonable person would have known." *Gregorich v. Lund*, 54 F.3d 410, 413 (7th Cir. 1995) (internal quotations omitted). "The plaintiff bears the burden of proof on this issue." *Id.* For a plaintiff to overcome a defendant's qualified immunity defense, a plaintiff "[f]irst . . . must show that her claim states a violation of her constitutional or statutory rights; and second, the plaintiff must show that the applicable legal standards were clearly established at the time the defendants acted." *Mitchell v. Randolph*, 215 F.3d 753, 755 (7th Cir. 2000). "The Supreme Court has described qualified immunity as balancing two interests – 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they

9
Case 2:08-cv-00708-WEC   Filed 10/08/09   Page 9 of 19   Document 60

perform their duties reasonably.'" *Matrisciano v. Randle*, 569 F.3d 723, 729 (7th Cir. 2009) (quoting *Pearson v. Callahan*, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009)).

**First Amendment Claim**

To establish a First Amendment retaliation claim, Reisinger must show:

> (1) that [she] was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused [her] to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of [her] constitutional rights.

*Chicago Reader v. Sheahan*, 141 F. Supp. 2d 1142, 1144 (N.D. Ill. 2001); *see also Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000) ("Any deprivation under color of law that is likely to deter the exercise of free speech, whether by an employee or anyone else, is actionable . . . if . . . the circumstances are such as to make such a refusal an effective deterrent to the exercise of a fragile liberty." (internal citations omitted)). Additionally, "'[w]here a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory.'" *Kelly v. Chambers*, No. 07-C-1005, 2007 U.S. Dist. LEXIS 89721, 2007 WL 4293633, at *8 (N.D. Ill. Dec. 6, 2007) (quoting *Suarez Corp. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000)).

At the outset, Perez attempts to characterize Reisinger's First Amendment claim as dependent upon the existence of a constitutional right protecting Reisinger's ability to post a link on a website to the Sheboygan Police Department website. (*See* Defendant's Reply Brief in Support of Motion to Dismiss at 2-3.) Perez asserts that Reisinger's First Amendment claim turns on the argument that Perez retaliated against Reisinger for posting a link to the Sheboygan Police Department website on her Brat City website. (*Id.*) Perez concludes by stating that, because Reisinger did not possess a

10
Case 2:08-cv-00708-WEC   Filed 10/08/09   Page 10 of 19   Document 60

constitutional right to post a link to the Sheboygan Police Department website on her personal website, Reisinger cannot establish that Perez infringed on her constitutional right to free speech. (*Id.*)

In my opinion, the real issue in this case is a bit more conventional: whether Reisinger has a right, under the First Amendment, to speak in favor of recalling an elected official. Reisinger's complaint frames her First Amendment claims as follows:

> The retaliatory actions taken against Ms. Reisinger by the City of Sheboygan were on orders of Mayor Perez, personally and in his capacity as Mayor of the City of Sheboygan and instituted as a means to intimidate and punish Ms. Reisinger for her past political activity and to intimidate and restrict or control her ability to express herself through her website and, as such, were a clear violation of her First Amendment rights of free speech.

(Compl. ¶ 27.) Moreover, the defendant's proposed findings of fact begin by describing Reisinger's efforts in seeking to recall Perez from office. (*See* DPFOF ¶¶ 3-5.) Given the above, the defendant's attempt to characterize Reisinger's First Amendment claim as dependent upon Reisinger's constitutional right to post a link on her website is off the mark. Consequently, this court will not grant (or deny) summary judgment to either party on the merits of such argument. Additionally, the right asserted in Reisinger's complaint – the right to participate in political campaigns – is protected by the First Amendment. *See Wilbur v. Mahan*, 3 F.3d 214, 215 (7th Cir. 1993) ("The right to criticize public officials is at the heart of the First Amendment's right of free speech."). *See also Murphy v. Cockrell*, 505 F.3d 446, 453 (6th Cir. 2007) ("[S]upporting a political party or candidate of one's choosing is a fundamental right protected under the First Amendment . . . ."). Based on the above, I am satisfied that Reisinger's recall efforts constituted constitutionally protected expressions of her First Amendment right to free speech.

The key to determining whether a deprivation of an individual's constitutional rights is actionable turns on whether "the circumstances are such as to make such [deprivation] an effective deterrent to the exercise of a fragile liberty." *Power*, 226 F.3d at 820. This standard is an objective

11

one and is viewed from the person of "ordinary firmness." *Pieczynski v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989). In the past, the Seventh Circuit has stated that a plaintiff can state an actionable First Amendment retaliation claim based upon "a campaign of petty harassment and even minor forms of retaliation, diminished responsibility, or false accusations. . . ." *Power*, 226 F.3d at 821 (internal quotations and citations omitted). *See also Brandt v. Board of Education of City of Chicago*, 480 F.3d 460, 465 (7th Cir. 2007) ("It is true that nominal damages can be awarded for a constitutional violation, as is sometimes true for other intentionally tortious conduct as well."); *Chicago Reader*, 141 F. Supp. 2d at 1145 ("Just to emphasize how low this threshold can be, teasing an employee for bringing a birthday cake to the office can be enough to state a retaliation claim."). Moreover, while Perez correctly notes that the Tenth Circuit in *Eaton v. Meneley*, 379 F.3d 949 (10th Cir. 2004), characterized this objective standard as "vigorous," the Seventh Circuit, by contrast, has stated that "an injury need not be great in order to be actionable." *Mosely v. Bd. of Educ.*, 434 F.3d 527, 534 (7th Cir. 2006) (internal quotations omitted).

Perez contends that any adverse actions he took against Reisinger were insufficient to chill a person of ordinary firmness from continuing to exercise his or her First Amendment rights. (Def.'s Br. at 11.) Perez continues by stating that, because the link in question generated no revenue for Reisinger and was removed from Reisinger's website for only a few days, Reisinger's injuries are, at the most, *de minimis*. (*Id.*) Perez concludes by asserting that any emotional harm Reisinger may have suffered is unrelated to the defendant's actions and stem entirely from the airing of the Mark Belling program that addressed the city's actions. (*Id.* at 10-11.) Based on the above, Perez contends that his actions were insufficient to chill a person of ordinary firmness from continuing to engage in the exercise of his or her First Amendment rights. (*Id.*)

Perez likens Reisinger's claim to that of the plaintiffs in *Eaton*. In *Eaton*, the plaintiffs, who had been involved in organizing a recall petition, brought a § 1983 action alleging that the local sheriff

12

deprived them of their First Amendment rights by running criminal history checks on them in retaliation for their attempt to remove him from office. *Id.* at 953-54. In rejecting the plaintiffs' claims, the court determined that "[the Sheriff's action] was not enough to chill the actions of persons of ordinary firmness who enter the arena of political debate." *Id.* at 956. Perez maintains that Reisinger's injuries incurred as a result of the defendant's actions are "more benign than the background checks in *Eaton*." (Def.'s Br. at 11.)

To reiterate, the standard for determining whether a First Amendment deprivation is actionable is an *objective standard* based on the person of ordinary firmness. Accordingly, the defendant's arguments concerning *this plaintiff's* injuries are not germane. Moreover, even assuming that this court must vigorously apply the "person of ordinary firmness" standard, the facts of this case are markedly distinguishable from the facts before the court in *Eaton*. In *Eaton*, the sheriff's background checks did not convey a demand for action or threat of investigation. By contrast, the City's cease-and-desist letter demanded that Reisinger remove the link. One can only speculate as to the repercussions that might befall an individual of ordinary firmness who ignored such a demand. What one need not speculate about is that the cease-and-desist letter – at the least – raises a reasonable inference that sanction would follow from Reisinger's refusal to abide by the City's directive. In sum, I reject the defendant's argument that the language of the City's cease-and-desist letter would not chill a person of ordinary firmness from continuing to engage in the exercise of his or her First Amendment rights, which in this case is alleged to be her action in seeking Perez's recall.

As for the defendant's argument that Reisinger's injuries are so inconsequential as to be *de minimis*, I am not so convinced. In support of this argument, Perez points to the Seventh Circuit's opinion in *Brandt v. Board of Education of the City of Chicago*, 480 F.3d 460 (7th Cir. 2007). In *Brandt*, the Seventh Circuit examined a class action suit brought on behalf of eighth grade students at a public school. *Id.* at 462. Among other issues, the Seventh Circuit's decision in *Brandt* addressed

13

whether the eighth graders, who were withheld from certain classes for protesting the school's rejection of their proposed t-shirt design, were retaliated against in contravention of their First Amendment rights. *Id.* at 463-66. In support of his claim that Reisinger's damages are *de minimis*, Perez seizes upon language in the *Brandt* opinion in which the court stated that "the damages sustained by an eighth grader as a consequence of missing phys ed and labs on nine days of an entire school year are minuscule to the point of nonexistent; and *de minimis non curat lex* (the law doesn't concern itself with trifles) is a doctrine applicable to constitutional as to other cases." *Id.* at 465. Based on the above, Perez asserts that "Reisinger's injury/damages as a result of voluntarily removing the link for a few days do not rise to the level of the minuscule injury in *Brandt*. It was no injury at all." (Def.'s Br. at 8-9.) Thus, Perez concludes that this action must be dismissed because "Reisinger did not suffer a specific injury by any acts of defendant Perez that is not minuscule." (*Id.* at 11.)

I am satisfied that a genuine issue of material fact exists at this time with respect to the plaintiff's claim for damages. This court is limited to the facts set forth in the defendant's proposed findings of fact. Accordingly, this court is bound by the defendant's statement that "Reisinger claims that the City's actions with respect to her website and the investigation of Lt. Johnston caused her significant distress and public humiliation, embarrassment, and even ridicule on other websites and blogs and that local newspapers published stories about the investigation." (DPFOF ¶ 28.) Although the defendant has presented some facts which might call into question the extent of these alleged damages and their cause (*see* DPFOF ¶¶ 29, 33, 34), the record nevertheless contains sufficient facts upon which to provide a reasonable jury with grounds to find that Reisinger suffered (at least nominal) damages as a result of Perez's actions.

Finally, the parties have not addressed in their briefs whether Perez was motivated to retaliate against Reisinger because of her recall efforts. In keeping with this court's obligation to construe all

14

facts in the light most favorable to the nonmoving party, the court will assume without deciding that Perez was motivated to retaliate against Reisigner because of her recall efforts.

**Clearly Established Constitutional Right**

Reisinger bears the burden of establishing that Perez's conduct contravened a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Narducci v. Moore*, 572 F.3d 313, 318 (7th Cir. 2009). "For a right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . in light of pre-existing law the unlawfulness must be apparent." *Id.* "A plaintiff may defeat a qualified immunity defense by point[ing] to a clearly analogous case establishing a right to be free from the specific conduct at issue or by showing that the conduct [at issue] is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (internal quotations omitted).

The plaintiff has not pointed to any clearly analogous case in support of her argument that Perez is not entitled to qualified immunity. But this court is not without some guidance on this issue. Indeed, the Sixth Circuit has stated that "it is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983." *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997). *See also Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990) ("[G]overnment officials . . . may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely anyone who takes an oath of office knows – or should know– that much."); *Dobosz v. Walsh*, 892 F.2d 1135, 1141-42 (2nd Cir. 1989) (same), *Schmidt v. Lincoln County*, 249 F. Supp. 2d 1124, 1137 (W.D. Wis. 2003) (citing *Barrett* with approval). And while this court's review has not found a Seventh Circuit opinion specifically addressing the contours of an individual's right to be free from retaliation by a public official because of the exercise of his or her First Amendment rights, a right is nevertheless well-

15

established if "there [is] such a clear trend in the case law that [courts] can say with fair assurance that the recognition of the right by controlling precedent [is] merely a question of time." *Foxworthy v. Buetow*, 492 F. Supp. 2d 974, 982-83 (S.D. Ind. June 22, 2007). Notably, in *Foxworthy*, the district court concluded that, with respect to an individual's right to be free from retaliation by a public official based on the exercise of the individual's First Amendment rights, "there is such a clear trend in the caselaw and it appears that it will only be a matter of time before the recognition of the right will be governed by controlling precedent." *Id.* at 983.

Given the foregoing, I am satisfied that a reasonable official would understand that retaliating against Reisinger for her recall efforts by issuing a cease-and-desist letter demanding that she refrain from lawful activities would violate her First Amendment rights. To reiterate, Mayor Perez directed the Sheboygan City Attorney to send Reisinger a letter demanding that she refrain from engaging in certain actions that she had every right to undertake. An elected official should know better than to utilize the resources of a public office for the purpose of punishing a private citizen for participating in a recall effort.[3] Such being the case, I am satisfied that the defendant has not demonstrated at this time that he is entitled to the defense of qualified immunity in this action.

**B. Mootness**

"It is fundamental to the exercise of judicial power under Article III of the United States Constitution that 'federal courts may not give opinions upon moot questions or abstract propositions.'" *Zessar v. Keith*, 536 F.3d 788, 793 (7th Cir. 2008) (quoting *Protestant Mem'l Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 729 (7th Cir. 2006). "Thus, if an event occurs while a case is pending . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the [case]

---

[3] It is important to emphasize that the court is not making a finding that Perez did in fact engage in such conduct with the requisite retaliatory intent. Whether the plaintiff will be able to prove that remains to be seen.

16

must be dismissed.'" *Cornucopia Inst. v. United States Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009) (internal quotations omitted). As a general rule, a plaintiff "whose injury can be redressed by a favorable judgement has standing to litigate." *Fed. Deposit Ins. Corp. v. Ernst & Young LLP*, 374 F.3d 579, 581 (7th Cir. 2004).

The defendant asserts that Reisinger's claim must be dismissed because the claim is moot. (Def.'s Br. at 11-12.) In particular, the defendant contends that "the City took an unequivocal position (1) advising Reisinger in writing ten months before filing her lawsuit that the cease and desist letter was no longer in effect and that she could reinstate the link, and that (2) she was not under investigation with respect to her use of the link." (Defendant's Reply Brief in Support of Summary Judgment Motion at 6.) The defendant concludes by stating that Reisinger's claim is moot "because she was permitted to restore the link and is in no jeopardy of any adverse action." (Def.'s Br. at 12.)

Simply put, I am satisfied that the plaintiff's First Amendment claim is not moot. The plaintiff claims that, as a result of Perez's retaliatory acts, she suffered damages such as mental anguish and monetary loss. (*See* Compl. ¶ 28.) It is difficult to discern how the defendant anticipates that the plaintiff's claim for damages stemming from Perez's retaliatory actions is somehow rendered moot by the City's about-face with respect to the statements included in its cease-and-desist letter. Indeed, the Seventh Circuit has made it clear that, when a plaintiff is seeking monetary damages, "[s]uch claims are not moot, even if the underlying misconduct which caused the injury has ended." *Wernsing v. Thompson*, 423 F.3d 732, 745 (7th. Cir. 2005). Or, stated differently, that Reisinger may now post a link on her Brat City website to the Sheboygan Police Department website does not moot her claim for damages stemming from the allegations in her complaint.

Given the foregoing, I am satisfied that the defendant's motion for summary judgment falls short. The same can be said for his motion to dismiss, which advances the same legal arguments

17
Case 2:08-cv-00708-WEC   Filed 10/08/09   Page 17 of 19   Document 60

addressed above. Consequently, the defendant's motion for summary judgment will be denied and the defendant's motion to dismiss will be denied.

**C. Motion for Sanctions**

Rule 11 of the Federal Rules of Civil Procedure provides for the imposition of sanctions on a litigant who files a frivolous action or is pursuing litigation for improper purposes, including harassment and delay. Fed. R. Civ. P. 11(b).

In support of his motion for sanctions, Perez states as follows:

> Reisinger's claim was clearly moot at the time this action commenced. Thus, Rule 11 sanctions are appropriate against Reisinger and her counsel.

(Def.'s Br. at 17.)

I have little difficulty in finding that the defendant's motion for sanctions should be denied. Indeed, I have already rejected the defendant's assertion that Reisinger's claims were moot at the time this action was filed. In the event that the defendant is asserting that the plaintiff's First Amendment claim is frivolous, this court's denial of the defendant's motions to dismiss and for summary judgment leads to the logical conclusion that the plaintiff's First Amendment claim is not frivolous. Moreover, the court does not find any support for the contention that the plaintiff is pursuing this action for improper purposes. Thus, the defendant's motion for sanctions will be denied.

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendant's motion for sanctions be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that on October 27, 2009 at 9:00 a.m. in Room 253 of the United States Courthouse, 517 E. Wisconsin Ave., Milwaukee, Wisconsin, a scheduling conference will be conducted to discuss with the parties the further processing of this case to final resolution.

**SO ORDERED** this 8th day of October 2009 at Milwaukee, Wisconsin.

**BY THE COURT:**

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge
